UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  *Plaintiff*,<br><br>v.<br><br>$263,367.00 IN UNITED STATES CURRENCY;<br>  *Defendant*.<br><br>[CLAIMANT: MIGUEL ACEVEDO] | Civil No.<br><br><br><br><br><br><br><br>January 4, 2022 |

## VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, Leonard C Boyle, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states that:

1. This is a civil *in rem* action brought to enforce the provisions of 21 U.S.C. § 881(a)(6), which provides for the forfeiture of proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 & 1355. Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendant is $263,367.00 in United States Currency ("Defendant Asset").

4. The Defendant Asset is located within the jurisdiction of this Court.

5. On October 18, 2021, Miguel Acevedo submitted an administrative claim of ownership to the Defendant Asset $263,367.00 in United States Currency.

## Background of Investigation

6. In or around the month of March 2021, members of law enforcement received information from two confidential informants ("CI-1" and "CI-2") that Miguel Acevedo

("Acevedo") was storing and selling narcotics from his residence located at 54 South Avenue, Meriden, Connecticut ("54 South Avenue"). Both CI-1 and CI-2 have provided information to law enforcement in the past that has proven to be true and accurate, including information regarding the distribution of illegal narcotics in Meriden.

7. CI-1 told law enforcement that Acevedo sells narcotics from 54 South Avenue. CI-1 told law enforcement that Acevedo is known as the "plug" or large level narcotics supplier around the Meriden area. CI-1 told law enforcement that he/she has spoken to several individuals who have purchased narcotics from Acevedo at 54 South Avenue.

8. CI-2 told law enforcement that he/she has met Acevedo at 54 South Avenue and has purchased narcotics from him at this location.

9. During the month of December of 2020, law enforcement attempted to initiate a motor vehicle stop of a car departing 54 South Avenue. The driver of the vehicle engaged the officers in pursuit until the driver was apprehended after a foot pursuit in New Haven, CT. Upon searching the driver of the vehicle, law enforcement located 77.1 grams of cocaine and 14.8 grams of heroin.

10. During the month of March 2021, law enforcement was interviewing an individual who was found to be in possession of narcotics. This individual informed officers that Acevedo was selling narcotics to this individual's dealer out of 54 South Avenue. This individual went on to inform law enforcement that he/she had directly witnessed narcotics transactions between Acevedo and the individual's dealer at 54 South Avenue.

11. On June 7, 2021, members of a law enforcement crime suppression unit were operating an unmarked vehicle in the area of South Avenue and South 1st Street in Meriden. While approaching 54 South Avenue in their vehicle from the east, officers observed a gray

      Hyundai Elantra bearing New York license plates leave the driveway of 54 South Avenue.  Law enforcement initiated covert surveillance of the Hyundai.  Law enforcement followed the vehicle for a short period of time before the vehicle came to an abrupt stop at a stop sign at the intersection of North 3rd Street and North Avenue.  The Hyundai then quickly turned onto North Avenue without using any signaling device.  The Hyundai then abruptly pulled into the driveway of 60 North Avenue.

12. At this time, law enforcement pulled behind the Hyundai and activated their undercover vehicle's flashing lights to initiate a motor vehicle violation stop.  The operator of the vehicle, identified by law enforcement as Acevedo, quickly exited the Hyundai.  Law enforcement asked Acevedo to come toward the rear of the Hyundai.  When replying to them, Acevedo was nervous, shaking, had a shaky voice, and appeared to have a dry mouth.  Law enforcement asked why he was so nervous and Acevedo replied that he had "two Balls" in his shorts pocket.  A "ball" is a street term for 3.5 grams of an illegal substance, usually cocaine or crack cocaine.  Acevedo was placed in handcuffs by police at which time law enforcement retrieved two small plastic bags containing crack cocaine and $580.00 in United States Currency from his pockets.

13. Acevedo told law enforcement that he had recently began selling narcotics due to a gambling habit and that he was just leaving his residence at 54 South Avenue when he was pulled over.  Law enforcement located two cell phones from inside the Hyundai that Acevedo was driving.  While Acevedo was handcuffed and in police custody, both of these phones were receiving constant phone calls and text messages.  One of the text messages which was visible on the cell phone's screen read that people are standing outside "your crib."   Also while Acevedo was handcuffed, he began yelling in Spanish to

a female (later identified as Vanessa Valle ("Valle")) and a male who were on the porch of 64 North Avenue.  After Acevedo yelled to Valle in Spanish, law enforcement observed her rapidly typing messages into her cell phone.

14. Law enforcement arrested and transported Acevedo to Meriden Police Headquarters.

15. A short time later, law enforcement was conducting surveillance at Acevedo's residence at 54 South Avenue.  Law enforcement observed Valle, and a female identified as Anixalie Vasquez Rivera ("Rivera") walking away from 54 South Avenue.  Law enforcement believed that Valle had left 64 North Avenue and travelled to 54 South Avenue in an attempt to remove or destroy narcotics trafficking evidence from 54 South Avenue.

16. Law enforcement stopped both Valle and Rivera as they were walking from 54 South Avenue.  Valle was searched by law enforcement and was found to be carrying a plastic baggie with cocaine in the front of her fanny pack.  Valle told law enforcement the cocaine was for personal use.  Law enforcement arrested Valle and transported her to Meriden Police Headquarters.

17. Law enforcement next conducted a search of Rivera.  Law enforcement saw an amount of United States Currency within a backpack that she was carrying.  Rivera told law enforcement that the money was hers but that she did not know how much money she was carrying.  Law enforcement set aside the backpack until an already applied for search and seizure warrant was obtained.  Rivera told law enforcement that she was the mother of Acevedo's children and that she had moved to 54 South Avenue about a year ago.  Rivera said she was unaware that Acevedo was selling drugs currently but that he used to sell narcotics in Middletown.


18. At Meriden Police Headquarters, law enforcement read Acevedo his Miranda Warnings and Rights. Acevedo told officers that he understood his rights and also signed a form acknowledging that he understood his rights. During the interview with law enforcement, Acevedo said that there was about 300 grams of crack cocaine at his residence at 54 South Street as well as approximately $240,000.00 in United States Currency on his bed. At this time, Acevedo also told law enforcement that he had sold the narcotics to the "white boy" who had engaged police in a motor vehicle pursuit in December of 2020 that ended in New Haven.

19. A short time later on June 7, 2021, law enforcement obtained a State of Connecticut Search and Seizure Warrant for 54 South Avenue, Meriden, CT. Law enforcement made entry into 54 South Avenue and found it to be unoccupied.

20. Law enforcement first searched Rivera's backpack that was initially set aside and seized $2,281.00 in United States Currency. Law enforcement then conducted a search of Acevedo and Rivera's bedroom. Law enforcement observed that the bedroom seemed to be divided in two, one side containing Rivera's belongings, and the other containing Acevedo's property. On top of the bed, law enforcement found two large, reusable shopping bags. In the first bag, officers found five large stacks of cash which were banded together and wrapped tightly in plastic. Some of the stacks had orange sticky notes attached to them with a dollar amount written on the sticky notes. The second shopping bag had four large stacks of cash which were also banded together and tightly wrapped in plastic. Also located in the second shopping bag was a large stack of cash held together by rubber bands and several large folds of cash.

21. In the top right drawer of Rivera's dresser, law enforcement found a loaded Glock 43 9mm handgun. Located next to the Glock in this drawer, law enforcement located and seized $20,000 in United States Currency, separated in several stacks. From other parts of the same drawer, law enforcement seized $2,376.00 and $32.00 in United States Currency. On top of the dresser, law enforcement located and seized $108.00.

22. Propped against the wall on what appeared to be Acevedo's half of the bedroom, law enforcement located a green drawstring bag. Within the bag, law enforcement found a zip lock plastic bag containing 106 smaller plastic baggies containing crack cocaine.

23. In a drawer of Acevedo's dresser, next to Acevedo's wallets and mail addressed to him, law enforcement located a small black container which held two stacks of cash that totaled $6,150.00 in United States Currency. In this same drawer, law enforcement found seven cell phones and a radio/scanner type of device.

24. In this dresser drawer, next to the black container containing the $6,150.00, law enforcement found a spiral notebook which is believed to be a drug ledger used by Acevedo. The ledger contained writings mostly in Spanish. In the notebook, law enforcement observed names of individuals with dollar amounts written next to the names. Officers also saw the words "8 kilos" written in the book with corresponding calculations. Law enforcement translated the ledger. The first page of the notebook talks about giving 15,000 but still owing 21,000. The next page states that "3 ½ went to 32 for $112,000." It then states "I sold one for $33,000 and have 2 left." On the next page, Acevedo talks about "8 kilos" of a certain type. Acevedo writes that he sold 4 to "32" for $128,000, sold another to "36" for $36,000, then writes that he broke down another kilo.

On the next page Acevedo writes about squaring away 3 of something for $33,000 and on the last page, he performs a calculation that equals 99,338.

25. Law enforcement also opened a safe located in Acevedo's bedroom closet and located a Glock 42 .380 handgun with two magazines and twelve .380 rounds in a box. Also located in the safe were 29 Blazer Brass .380 rounds and two boxes of 188 Winchester 9 mm rounds.

26. In total, law enforcement seized $283,117.00 in United States Currency.[1]

27. On June 7, 2021, Acevedo was arrested and charged with violations of Connecticut General Statutes: 21a-279(a) Possession of a Controlled Substance; 21a-277(a) Possession of a Controlled Substance with the Intent to Distribute; and 53a-217 Criminal Possession of a Firearm. These charges remain pending.

28. Besides his June 7, 2021 arrest and pending criminal charges, Acevedo has a criminal history containing numerous state and federal arrests and convictions for narcotics-related offenses dating back to at least 2001. For example, on June 30, 2008, Acevedo was convicted for violations of the federal Controlled Substances Act, Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine and Cocaine Base and was sentenced to 60 months imprisonment.

## CONCLUSION

29. Based on the above information, it is believed that $263,367.00 in United States Currency constitutes proceeds from the illegal sale and distribution of narcotics and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

---

[1] $19,750.00 of the United States Currency seized was administratively forfeited by the Drug Enforcement Administration as no timely administrative claim was submitted for this amount. The $263,367.00 remaining is the subject of this civil forfeiture action.

30. The Defendant Currency represents proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

Wherefore, the United States of America prays that a Warrant of Arrest In Rem be issued for $263,367.00 in United States Currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

          LEONARD C BOYLE,
          UNITED STATES ATTORNEY

By:   /S/ David C. Nelson
       David C. Nelson (ct25640)
       Assistant U.S. Attorney
       157 Church Street, 24th Floor
       New Haven, Connecticut 06510
       Tel:   (203) 821-3700
       Fax:  (203) 773-5373
       David.C.Nelson@usdoj.gov

**DECLARATION**

I am a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice, and the individual assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of January, 2022.

/s/ Kyle Savo
KYLE SAVO
TASK FORCE OFFICER, DEA